OHANIAN & TIKRITI, PC
Shant Ohanian (SBN. 281652)
600 South Lake Avenue, Suite 200
Pasadena, California 91106
Telephone:     (626) 219-8350
Facsimile:      (626) 219-8320

Attorneys for Plaintiffs,

HELLADA, INC.; K&H INTERNATIONAL

## UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA – CENTRAL DISTRICT

| | |
|---|---|
| HELLADA, INC., a California corporation; K&H INTERNATIONAL, a California corporation | **COMPLAINT FOR DAMAGES FOR:** |
| Plaintiffs, | 1. **Breach of Written Contract** |
| v. | 2. **Breach of the Covenant of Good Faith and Fair Dealing** |
| CIRTRAN BEVERAGE CORP., A UTAH CORPORATION; PLAY BEVERAGES, LLC, A DELAWARE LIMITED LIABILITY COMPANY CIRTRAN CORPORATION, a Utah corporation; IEHAB HAWATMEH, an individual; FADI NORA, an individual, and DOES 1 to100, inclusive, | 3. **Intentional Misrepresentation** |
| | 4. **Negligent Misrepresentation** |
| | 5. **Fraudulent Concealment and Misrepresentation** |
| Defendants. | DEMAND FOR JURY TRIAL |

COMES NOW Plaintiffs HELLADA, INC., a California corporation; and K&H INTERNATIONAL, a California corporation (hereinafter "Plaintiffs"), by and through its counsel, and complains against Defendants CIRTRAN BEVERAGE CORP.; PLAY BEVERAGES, LLC; IEHAB HAWATMEH, FADI NORA and DOES 1-100 inclusive (collectively "Defendants"), and allege as follows:

## PARTIES

1.      Plaintiff, HELLADA, INC. is, and was at all times mentioned herein, a California corporation, with its principal place of business located in the Los Angeles, California.

2.      Plaintiff, K&H INTERNATIONAL is, and was at all times mentioned herein, a California corporation, with its principal place of business located in the Los Angeles, California.

3.      Plaintiffs are informed, believe, and thereupon allege that Defendant CIRTRAN BEVERAGE CORP. ("CIRTRAN"), is, and at all times mentioned herein was, a corporation organized pursuant to the laws of the State of Utah, with its principal place of business located at 4125 South 6000 West, West Valley City, Utah 84128.

4.      Plaintiffs are informed, believe, and thereupon allege that Defendant PLAY BEVERAGES, LLC ("PLAY BEVERAGES") is, and at all times herein mentioned was, a limited liability company organized pursuant to the laws of the State of Delaware, with its principal place of business located at 4125 South 6000 West, West Valley City, Utah 84128.

5.      Plaintiffs are informed, believe, and thereupon allege that Defendants CIRTRAN and PLAY BEVERAGES operate under the same management and control, that they share agents and employees, their names are used interchangeably, and that CIRTRAN and PLAY BEVERAGES are alter egos of one another.

6.      Defendant IEHAB HAWATMEH (hereinafter "HAWATMEH") is, and at all times relevant to this action was, an individual residing in in the City of Salt lake City, Utah.  At all relevant times to this action, Defendant HAWATMEH was the Chief Executive Officer and/or shareholder of Defendant CIRTRAN, and had control over all business decisions made by CIRTRAN.

7.     Defendant FADI NORA (hereinafter "NORA") is, and at all times relevant to this action was, an individual residing in in the City of Salt lake City, Utah.  At all relevant times to this action, Defendant NORA was the Chief Financial Officer and/or shareholder of Defendant CIRTRAN, and had control over the financial decisions made by CIRTRAN.

8.     Defendants CIRTRAN, PLAY BEVERAGES, HAWATMEH, and NORA are sometimes hereinafter referred to collectively as "Defendants" or generically as "Defendant". Defendant PLAY BEVERAGES and CIRTRAN are sometimes hereinafter referred to as the "Entity Defendants", and HAWATMEH, and NORA sometimes hereinafter referred to as the "Individual Defendants".

9.     The true names or capacities of all Defendants Does 1 through 100 are unknown to Plaintiffs who sued them by such fictitious names. Each Defendant Doe caused Plaintiffs' injury and damage. Plaintiffs will amend the complaint to allege the true names and capacities of Defendants, whether individual, corporate, associate or otherwise, when the same have been ascertained. Plaintiffs are informed and believe and based on that information and belief alleges that each fictitiously named Defendant is in some manner responsible for the damages alleged.

10.     Plaintiffs are informed and believe, and thereupon allege that each and every Defendant named herein, is an agent, employee, employer, and/or in a joint venture with each other Defendant named herein. Plaintiffs further allege that each act or omission alleged on the part of each Defendant was conducted in the course, scope, and furtherance of the agency, employment, and/or joint venture in which each other Defendant is participating. As such, Plaintiffs allege that each Defendant is vicariously responsible for the acts or omissions of each other Defendant and has acted in the course and scope of such agency, partnership, or employment.

11.     Each paragraph in this Complaint is incorporated by reference in each other paragraph. Each allegation for each cause of action is incorporated by reference in every other cause of action. Despite the labels on the causes of action and section headings and dividers, the complaint, and the remedies sought are to be read as one unit. To the extent any cause of action stated herein is insufficiently plead, but such lack of sufficiency can be satisfied by other allegations stated in the

Complaint, that other allegation is incorporated by reference into the insufficient cause of action to cure the insufficiency.

## JURISDICTION AND VENUE

12.   Pursuant to 28 U.S.C. § 1332(a)(2) "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of a State and citizens or subjects of a foreign state[.]" Pursuant to 28 U.S.C. § 1391(a)(2) "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in…a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

## SPECIFIC ALLEGATIONS COMMON TO MORE THAN ONE CAUSE OF ACTION

13.   Plaintiffs are informed, believe, and thereupon allege that on or about November 1, 2006, PLAY BEVERAGES entered into a Product License Agreement ("Playboy License") with Playboy Enterprises International, Inc. ("Playboy, Inc."), pursuant to which PLAY BEVERAGES licensed the use of Playboy, Inc.'s trademarks on certain beverage products.

14.   Plaintiffs are informed, believe, and thereupon allege that CIRTRAN is in the business of manufacturing, advertising, marketing, distributing, and selling Playboy, Inc. brand beverages under the Playboy License. The primary beverage product manufactured and sold by CIRTRAN is the Playboy Energy Drink.

15.   On or about December, 2011, Plaintiffs, K&H INTERNATIONAL contracted with Defendants entered into a Distribution Agreement, ("Agreement"). As consideration for Plaintiffs' exclusive distribution rights, per the Agreement, CIRTRAN was to receive certain royalty payments from Plaintiffs, which Plaintiffs complied with. Plaintiffs paid more than $3,600,000 to Defendants.

16.   Although Plaintiffs received some of the products, many were damaged at the time of delivery and Plaintiffs were not able to sell a large quantity of them.

17.   On or about August, 2012, Plaintiff, HELLADA, INC. and Defendants entered into a Distribution Agreement, ("Agreement"). As consideration for Plaintiffs' exclusive distribution rights, per the Agreement, CIRTRAN was to receive certain royalty payments from Plaintiffs, which Plaintiffs complied with. The August 3 Agreement between Hellada and Cirtran gave Hellada the

right to become a distributor of various Playboy Enterprises International, Inc. ("Playboy") beverage products. As per section 1.4 of the August 3 Agreement, Hellada placed an initial order of:

- 2880 cases of Playboy Energy Drink  - 8.4oz  - Regular – 1 40' container
- 5760 cases of Playboy Energy Drink  - 8.4oz  - Sugar Free  -2 40' containers
- 1600 cases of Playboy Energy Drink  - 16oz  - Regular  - 1 40' container
- 400 cases of Playboy Energy Drink  - 16oz  - Regular  - 1/2 20' container
- 1600 cases of Playboy Energy Drink  - 16oz  - Sugar Free  - 1 40' container
- 400 cases of Playboy Energy Drink  - 16oz  - Sugar Free  - 1/2 20' container

These orders were initially memorialized in a separate purchase order agreement dated January 21, 2013 ("January 21 Purchase Order"). The January 21 Purchase Order also gave a delivery date of February 18, 2013 for all ordered products. However, after Cirtran was not able to meet the agreed-upon delivery date of February 18, 2013, a new purchase order agreement was sent to Hellada providing a new delivery date of March 8, 2013. March 8, 2013 came and went, and no product was delivered. As of March 18, 2013, Plaintiffs have made payments to Defendants in excess of

18.     These orders were initially memorialized in a separate purchase order agreement dated January 21, 2013 ("January 21 Purchase Order"). The January 21 Purchase Order also gave a delivery date of February 18, 2013 for all ordered products. However, after Cirtran was not able to meet the agreed-upon delivery date of February 18, 2013, a new purchase order agreement was sent to Hellada providing a new delivery date of March 8, 2013. March 8, 2013 came and went, and no product was delivered. As of March 18, 2013, Plaintiffs have made payments to Defendants in excess of

19.     In reliance on Defendant CIRTRAN's representation regarding these products, Plaintiffs entered into various agreements to distribute the Playboy Energy Drinks to its territories.

20.     In addition, when executing the October 23, 2013 Agreement, Plaintiffs were unaware that Defendants were actively involved in litigation with Playboy, Inc. over termination of the Playboy License ("Playboy Litigation").

21.     Plaintiffs are informed, believe, and thereupon allege that in or around April of 2011, creditors of PLAY BEVERAGES filed a petition commencing an involuntary Chapter 7

bankruptcy proceeding against PLAY BEVERAGES, which PLAY BEVERAGES converted to a voluntary Chapter 11 bankruptcy. That case is entitled In Re PLAY BEVERAGES, LLC, United States Bankruptcy Court, District of Utah, Case No. 1126046 ("Bankruptcy Action").

22.     Plaintiffs are informed, believe, and thereupon allege that on or about June 7, 2011, Playboy, Inc. notified Defendants that the Playboy License had expired due to Play Beverages' failure to make royalty payments to Playboy, Inc.

23.     Plaintiffs are informed, believe, and thereupon allege that on or about August 29, 2011, PLAY BEVERAGES initiated an adversary proceeding against Playboy, Inc. in the Bankruptcy Action, alleging that Playboy, Inc. had breached its contractual obligations and tortuously interfered with PLAY BEVERAGES' distribution network. Playboy, Inc. filed a counterclaim in the Bankruptcy Action against PLAY BEVERAGES.

24.     Plaintiffs are informed, believe, and thereupon allege that, pursuant to the licensing agreement between PLAY BEVERAGES and Playboy, Inc., the initial term of the Playboy License expired on March 30, 2012. Plaintiff is informed, believes, and thereupon alleges that the term of the licensing agreement was then extended to July 31, 2012.

25.     Plaintiffs are informed, believe, and thereupon allege that in July of 2012, Play Beverages and Playboy, Inc. entered into a second extension agreement for the Playboy License, providing that the Playboy License would expire on September 30, 2012. The second extension agreement further provided that the Playboy License would end on an alternative date if Play Beverages obtained an order confirming its Chapter 11 reorganization plan by September 30, 2012. Alternatively, the extension agreement provided that it would terminate automatically if PLAY BEVERAGES' proposed reorganized debtor failed to make a $2,000,000.00 payment into escrow for the benefit of Playboy, Inc. within a specified timeframe.

26.     Plaintiffs are informed, believe, and thereupon allege that in August of 2012, a new license agreement was executed between PLAY BEVERAGES and Playboy, Inc. extending the Playboy License. The agreement called for PLAY BEVERAGES to pay $2,000,000.00 to Playboy, Inc. by a specified date in late September to early October of 2012. PLAY BEVERAGES failed to make the $2,000,000.00 payment to Playboy, Inc.

27.     Plaintiffs are informed, believe, and thereupon allege that on or about October 15, 2012, Playboy, Inc. terminated the Playboy License with PLAY BEVERAGES.

28.     Plaintiffs are informed, believe, and thereupon allege that PLAY BEVERAGES' Chapter 11 Bankruptcy proceeding was dismissed by the Court in December of 2012.

29.     Plaintiffs are informed, believe, and thereupon allege that the Playboy Litigation is currently being litigated outside of the Bankruptcy Court, in PLAY BEVERAGES, LLC, et al. v. Playboy Enterprises, Inc., et al., Illinois Superior Court, Cook County, Case No. 2012L012181 ("Illinois Case") Plaintiff is informed, believes, and thereupon alleges that CIRTRAN is a plaintiff in the Illinois Case.

30.     Neither CIRTRAN nor PLAY BEVERAGES informed Plaintiffs that PLAY BEVERAGES was in bankruptcy prior to Plaintiff's execution of the Agreement or prior to Plaintiff's tendering of royalty payments to CIRTRAN for the First Contract Year.

31.     Neither CIRTRAN nor PLAY BEVERAGES informed Plaintiffs of the Playboy Litigation prior to Plaintiff's execution of the Agreement or prior to Plaintiffs' tendering of royalty payments to CIRTRAN for the First Contract Year.

32.     Due to the Playboy Litigation, Plaintiffs have been unable to secure necessary funding in order to manufacture, market, and distribute Playboy Energy Drink in the Territories, as investors and financiers have indicated an unwillingness to lend or invest in a trademarked product which is being actively litigated. Furthermore, Defendant HAWATMEH contacted manufacturing partners of Plaintiffs to inform them of Defendants' malicious termination of the October 23, 2013 Agreement, which has led to various manufactures refusing to complete fully-placed orders by Plaintiff.

**FIRST CAUSE OF ACTION**

BREACH OF WRITTEN CONTRACT

(Against All Defendants)

33.     Plaintiffs incorporate by this reference the other allegations set forth in this Complaint.

34.     Plaintiffs entered into a written Agreement with CIRTRAN and PLAY

6

COMPLAINT

BEVERAGES, granting Plaintiffs manufacturing and distribution rights to the Playboy Energy Drink. See EXHIBIT NO. 1.

35. The Defendants breached the Agreement in various ways, including but not limited to:

a. Failing to inform Plaintiffs of the Bankruptcy Action at the time of execution of the Agreement, in violation of Section 8.1 of the Agreement;

b. Failing to inform Plaintiffs of the Bankruptcy Action prior to Plaintiffs' tendering of royalty payments, in violation of the Agreement;

c. Failing to obtain approval of the Agreement from the Bankruptcy Court, as required by 11 U.S.C. § 363, which states that a debtor-in-possession must obtain approval from the Bankruptcy Court prior to entering into any transactions outside the ordinary course of business, in violation of the Agreement.

d. Failing to inform Plaintiffs of the pending Playboy Litigation prior to Plaintiff's execution of the Agreement;

e. Terminating the Agreement without cause prior to the expiration of the initial ten year term, as provided in the Agreement;

f. Plaintiffs have fulfilled its obligations under the Agreement. Any unfulfilled obligations are excused by Defendants' breaches.

## SECOND CAUSE OF ACTION

BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

(Against All Defendants)

36. Plaintiffs incorporate by this reference the other allegations set forth in this Complaint.

37. All contracts include the implied covenant of good faith and fair dealing that requires the parties to the contract to act in good faith and take the necessary steps to fulfill and honor their respective contractual obligations. The covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

38. Through the Agreement, Plaintiffs expected to enjoy the benefits of the bargain.

39.     The Defendants have breached the covenant of good faith and fair dealing by doing, inter alia, the following:

    a.   Failing to inform Plaintiffs of the Bankruptcy Action at the time of execution of the Agreement, in violation of the Agreement;

    b.   Failing to inform Plaintiffs of the Bankruptcy Action prior to Plaintiff's tendering of royalty payments, in violation of the Agreement;

    c.   Failing to obtain approval of the Agreement from the Bankruptcy Court, as required by 11 U.S.C. § 363, which states that a debtor-in-possession must obtain approval from the Bankruptcy Court prior to entering into any transactions outside the ordinary course of business, in violation of the Agreement.

    d.   Failing to inform Plaintiffs of the pending Playboy Litigation prior to Plaintiff's execution of the Agreement;

    e.   Terminating the Agreement without cause prior to the expiration of the initial ten year term, as provided in the Agreement;

    f.   Plaintiffs have fulfilled its obligations under the Agreement. Any unfulfilled obligations are excused by Defendants' breaches.

## THIRD CAUSE OF ACTION

INTENTIONAL MISREPRESENTATION

(Against All Defendants)

40.     Plaintiffs incorporate by this reference the other allegations set forth in this Complaint.

41.     Through the Agreement, and through their principal IEHAB HAWATMEH, Defendants' knowingly and falsely represented to Plaintiffs:

    a.   That they had the power and authority to enter into the Agreement, pursuant to the Playboy License and deliver to Plaintiffs the contracted products on time.

    b.   That the Agreement had been duly authorized and approved by all necessary action.

    c.   Plaintiffs are informed, believe and thereupon allege that Defendants intended

8

COMPLAINT

that Plaintiffs rely on these statements to induce Plaintiffs to enter into the Agreement and to accelerate Plaintiffs' royalty payments under the Extension Guarantee for the purpose of raising capital in order for Defendants to make their own $2,000,000.00 royalty payment which was due to Playboy, Inc., so as to maintain the Playboy License.

        d.  Plaintiffs did in fact reasonably rely on these statements.

## FOURTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

(Against All Defendants)

42.    Plaintiffs incorporate by this reference the other allegations set forth in this Complaint.

43.    Through the Agreement, and through their principal IEHAB HAWATMEH, Defendants' represented to Plaintiffs:

44.    That they had the power and authority to enter into the Agreement, pursuant to the Playboy License;

45.    That the Agreement had been duly authorized and approved by all necessary action.

46.    That in consideration of the additional royalty payments, Plaintiffs would have the right to begin the manufacture and distribution to the Russian territory.

47.    Plaintiffs are informed, believe and thereupon allege that Defendants intended that Plaintiffs rely on these statements to induce Plaintiff to enter into the Agreement and to accelerate Plaintiffs' royalty payments under the Extension Guarantee for the purpose of raising capital in order for Defendants to make their own $2,000,000.00 royalty payment which was due to Playboy, Inc., so as to maintain the Playboy License.

48.    Defendants failed to use reasonable care to determine whether the representations were true.

49.    Plaintiffs did in fact reasonably rely on these statements.

## FIFTH CAUSE OF ACTION

### FRAUDULENT INDUCEMENT AND CONCEALMENT

(Against All Defendants)

9

COMPLAINT

50.     Plaintiffs incorporate by this reference the other allegations set forth in this Complaint.

51.     The Defendants have employed a scheme designed to induce Plaintiffs to enter into the Agreement and thereby defraud Plaintiffs for their own benefit. The fraudulent scheme includes the use of material misrepresentations and omissions (fraudulent concealment of material facts and of information in the Defendants' sole possession) and the fraudulent inducement to enter into the Agreement as noted herein.

52.     Specifically, Defendants, through their principal IEHAB HAWATMEH, falsely represented to Plaintiffs that they had the power and authority to enter into the Agreement pursuant to the Playboy License. Defendants also falsely represented to Plaintiff that the Agreement had been duly authorized and approved by all necessary action.

53.     Defendants concealed from Plaintiffs that at the time Plaintiff executed the Agreement, PLAY BEVERAGES was in Chapter 11 Bankruptcy proceedings, as well as actively involved in the Playboy Litigation over Playboy, Inc.'s termination of the Playboy License.

54.     Defendants further concealed their involvement in the Bankruptcy Action and Playboy Litigation from Plaintiffs at the time that Plaintiffs tendered royalty payments to Defendants per the Extension Guarantee.

55.     With regard to each and every fact or quantum of information concealed from Plaintiffs, Defendants had a duty to disclose the material facts and information withheld from Plaintiffs.

56.     Plaintiffs reasonably and justifiably relied upon Defendants' false and fraudulent representations, actions, omissions, and concealments and, as a consequence, entered into the Agreement to Plaintiff's detriment.

57.     The Defendants have engaged in the above described fraudulent activity throughout the negotiation and execution of the Agreement.

**PRAYER FOR RELIEF**

58.     As a result Defendants' actions, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $9,000,000.00, exclusive of attorneys' fees, interest,

1    and costs.

2    59.    For special damages according to proof;

3    60.    For appropriate punitive damages;

4    61.    For those costs, fees, and expenses incurred in bringing this action;

5    62.    For attorneys' fees according to proof;

6    63.    For pre- and post- judgment interest at the highest rate allowed by law; and

7    64.    For such other and further relief as the Court deems just and equitable.

8    **JURY REQUEST**

9    65.    Plaintiff requests that this matter be tried to a jury and tenders herewith the fee for

10   impaneling said jury.

11   Dated: August 20, 2014                    Respectfully submitted,

12                                              OHANIAN & TIKRITI, PC

13                                              _____

14                                              SHANT OHANIAN,
                                                Attorney For Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT